**No. 24-40442**
**consolidated with**
**No. 24-40443**

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

Carla Frew; All Plaintiffs; Class Members,

Plaintiffs - Appellants/Cross-Appellees

v.

Cecile Erwin Young, Executive Commissioner, Texas Department of Health and Human Services; Jennifer A. Shuford, Commissioner, Texas Department of Health and Human Services,

Defendants - Appellees/Cross-Appellants

---

**On Appeal from**
United States District Court for the Eastern District of Texas
3:93-CV-65

---

**BRIEF OF APPELLANT ALL PLAINTIFFS, CLASS MEMBERS, AND CARLA FREW**

---

**Timothy Borne Garrigan**
State Bar No. 07703600
tim2@sgclaw.org
**Timothy David Craig**
State Bar No. 24045716
timothykraig@gmail.com

**Stuckey & Garrigan Law Offices**
2803 North Street
Nacogdoches, Texas 75963-1902
Phone: 936-560-6020
Fax: 936-560-9578

## **CERTIFICATE OF INTERESTED PERSONS**

Appellant certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**1.)  Plaintiffs-Appellants:**

Carla Frew;

Charlotte Garvin, as next friend of her minor children Johnny Martinez,

Brooklyn Garvin and BreAnna Garvin; Class Members;

Nicole Carroll, Class Representative;

Maria Ayala, as next friend of her minor children, Christopher Arizola, Leonard Jimenez, and Joseph Veliz;

Mary Jane Garza, as next friend of her minor children, Hilary Garza and Sarah Renea Garza

**2.)  Defendants-Appellees:**

Cecile Young, M.D.;

Jennifer Shuford, M.D.

**3.)  Counsel for Plaintiffs-Appellants:**

Timothy Borne Garrigan
Timothy David Craig
Stuckey & Garrigan Law Offices
2803 North Street
Nacogdoches, TX 75965

**4.)**    **Counsel for Defendants-Appellees:**

Ken Paxton, Attorney General of Texas;

Jeffrey C. Mateer, First Assistant Attorney General;

Ryan L. Bangert, Deputy First Assistant Attorney General;

Darren L. McCarty, Deputy Attorney General for Civil Litigation;

Thomas A. Albright, Chief for General Litigation Division;

Assistant Attorneys General
Andrea Leyva
William D. Wassdorf
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548

Respectfully Submitted,

*/s/Timothy Borne Garrigan*
Timothy Borne Garrigan
State Bar No. 07703600
tim2@sgclaw.org
*/s/Timothy David Craig*
Timothy David Craig
State Bar No. 24045716
timothykraig@gmail.com
Stuckey & Garrigan Law Offices
2803 North Street
Nacogdoches, Texas 75963-1902
Phone: 936-560-6020
Fax: 936-560-9578

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiffs request oral argument in this case because of the complex factual and procedural circumstances, including that it involves an earlier appeal and proceedings on remand, and because of the importance of the issues. Oral argument could aid the Court in deciding these important and complex matters.

## **TABLE OF CONTENTS**

**CERTIFICATE OF INTERESTED PERSONS**.....................................ii

**STATEMENT REGARDING ORAL ARGUMENT** ........................ iv

**TABLE OF CONTENTS** ............................................................v

**TABLE OF AUTHORITIES** ................................................. vii

**JURISDICTIONAL STATEMENT** ..........................................9

**ISSUES PRESENTED** ...........................................................13

**STATEMENT OF THE CASE** ................................................16

A. History of this case:..........................................................16

B. Background facts related to fees: .....................................20

C.  The history of the fees at issue: ......................................22

    1.  History related to 2011-2021 fees (Dkt. 1972 and Dkt. 2055).................22

    2.  History related to 2022 fees (Dkt. 1942 and Dkt. 2056). ..........................27

**SUMMARY OF THE ARGUMENT** .........................................30

**ARGUMENT** .........................................................................32

A.  Standard of Review...........................................................33

B.  Defendants failed to produce evidence  that plaintiffs' requested and supported routine rate within the range of market rates was unreasonable, so it was clear error for the district court to award a lower rate. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995)................34

C.  A two-percent (2%) enhancement awarded for the ongoing delay in payment of fees earned since 2011 is unreasonably small and substantially contributes to a fee history that effectively prevents competent counsel from assisting with representation of the plaintiffs. .........40

D.  The denial of fees for the motion practice anticipated by the 2007 CAOs is contrary to this Court's findings that the opportunity to have the Court decide whether further action is needed was part of the success achieved

in obtaining the 2007 CAO for which Plaintiffs are prevailing party and lacks a reasonably specific explanation of the basis for the denial. *Frew v. Traylor*, 688 Fed.Appx. 249, 251 (5th Cir. 2017). ......................................45

E.  The District Court's denial of fees as premature for CAO related motion practices that remain unresolved and requiring successful resolution of these practices to seek these fees in the future is contrary to *Frew v. Traylor*, 688 Fed.Appx. 249, 251 (5th Cir. 2017), especially as regards the denial of fees related to Plaintiffs' successful defense of the Provider Supply CAO for more than a decade. ...............................................................53

F.  The District Court improperly denied all fees for all time entries that Defendants alleged were vague without explanation and reversing the a prior order that earlier that fees should be reduced by applicable percentages, also without explanation. ...........................................................56

G.  The District Court improperly denied fees for Plaintiffs' motion to appoint additional counsel based on lack of success since that motion resulted in and was denied as moot because of the award of fees...................58

**CONCLUSION**......................................................................................................**60**

**CERTIFICATE OF SERVICE** ...........................................................................**61**

**CERTIFICATE OF COMPLIANCE** ..................................................................**62**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alliance to End Repression v.* Chicago, 356 F3d 767 (7th Cir. 2004) .................46

*Blum v. Stenson*, 465 U.S. 886 (1984) ....................................35

*Blum v. Stenson*, 465 U.S. at p.897 .........................................40

*Cody v. Hillard*, 304 F.3d 767 (8th Cir. 2001) ............................47

*Cruz v. Hauck*, 762 F.2d 1230 (5th Cir. 1985) ...........................52

*Ellwest Stereo Theatre, Inc. v. Jackson*, 653 F.2d 954 (5th Cir. 1981)................52

*Espino v. Besteiro*, 708 F.2d 1002 (5th Cir. 1983) ........................52

Fed. R. App. P. 4 ...............................................................10

*Frew v. Gilbert*, 109 F.Supp.2d. 579 (E.D. Tex. 2000).........................17

*Frew v. Hawkins,* 540 U.S. 431 (2004) .....................................17

*Frew v. Janek*, 780 F.3d 320 (5th Cir. 2015) ..............................51

*Frew v. Traylor*, 688 Fed.Appx. 249 (5th Cir. 2017) ................... passim

*Green Tree Servicing, L. L.C. v. Charles*, 872 F.3d 637 (5th Cir. 2017) .........9, 29

*Grisham v. City of Fort Worth*, 837 F.3d 564 (5th Cir. 2016) .............................52

*Hadix v. Johnson*, 143 F.3d 246 (6th, 1998) .........................................47

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)................................... passim

*Islamic Center of Mississippi, Inc. v. City of Starkville, Miss*., 876 F.2d
    465(5th Cir 1989)................................................. 35, 38, 39

*Johnson v. City of Tulsa, Okla.*, 489 F.3d 1089 (10th Cir. 2007)........................46

*Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir. 1995) 34, 35, 58

*McCutcheon v. America's Servicing Co.*, 560 F.3d 143 (3rd Cir. 2009)...............35

*Miller v. Carson*, 628 F.2d 346 (5th Cir. 1980)....................................47

*Perdue v. Kenny A*., 559 U.S. 542 (2010) ...................................... 33, 40

*Plyler v. Evatt*, 902 F.2d 273 (4th Cir.1990) .................................................. 46, 47

*Powell v. C.I.R.*, 891 F.2d 1167 (5th Cir. 1990) ......................................35

*Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir. 2010) ...............47

*Riddell v. National Democratic Party*, 624 F.2d 539 (5th Cir. 1980) ...................52

*Sanchez v. City of Austin*, 774 F.3d 873 (5th Cir. 2014) ........................................52

*Turner v. Orr*, 785 F.2d 1498 (11th Cir.1986) .............................................. 46, 47

*Walker v. United States Dept. of Housing and Urban Development*, 99 F.3d 761 (5th Cir. 1996) ...................................................................12

**Statutes**

42 U.S.C. §1988 ................................................................................ 33, 40

**Rules**

Fed. R. Civ. P. 59 ................................................................................. passim

# JURISDICTIONAL STATEMENT

This is a complex appeal involving multiple fee related orders.

Dkt. 1972, Dkt. 2042, Dkt. 2055, and Dkt. 2056 are orders appealed by the parties.[1]

It should be noted that some of the orders may not be ripe for consideration as of the time this brief is filed. The appealed orders Dkt. 2055 and Dkt. 2056 are subject to motions under Fed. R. Civ. P. 59 and the deadline for filing a notice of appeal for these orders may not have run. On June 21, 2024, Plaintiffs filed a motion to amend Dkt. 2055 (fee order for 2011-2021)[2] and Defendants filed a motion to amend Dkt. 2055 and Dkt. 2056 (order on the parties' joint motion to amend Dkt. 2042).[3] The District Court issued an order addressing both Rule 59 motions regarding Dkt. 2055 and 2056 on January 3, 2025 (Dkt. 2080).[4] However, the District Court's order on the parties respective Rule 59 motions may not be considered final since it ordered the parties to confer and file a joint notice of any additional relief that might be required for this appeal.[5] Pursuant to this requirement,

---

[1]    Dkt. 2059 at ROA.129229, Dkt. 2060 at ROA.129231, and Dkt. 2064 at ROA.129246.

[2]    Dkt. 2058 at ROA.129223.

[3]    Dkt. 2061 at ROA.129233.

[4]    Dkt. 2080 at ROA.145053.

[5]    See *Green Tree Servicing, L. L.C. v. Charles*, 872 F.3d 637, 639-640 (5th Cir. 2017).

the parties filed a joint notice on January 31, 2025.[6] On that same day, Plaintiffs'

filed a Rule 59 motion regarding Dkt. 2080.[7] The District Court has not yet entered

an order finalizing Dkt. 2080 or addressing Plaintiffs motion to amend Dkt. 2080.

As a result of this sequence of events, the time to appeal Dkt. 2055 and 2056 under

Fed. R. App. P. 4 may be stayed pending a final ruling on the parties respective Rule

59 motions to amend those orders.

Otherwise, this Court has jurisdiction to review the District Court fee orders

on appeal. Collectively, these orders address fees incurred between 2011 and 2022.

This appeal concerns Dkt. 2055[8] which address fees incurred between 2011 and 2021

and Dkt. 2042[9] which addresses fees incurred in 2022. This appeal also involves

Dkt. 2056[10] which addressed the parties' joint motion to modify Dkt. 2042.

The District Court entered Dkt. 2055 on May 24, 2024[11] and Plaintiffs and

Defendants both filed a Motion to amend or correct Dkt. 2055 on June 21, 2024.[12]

---

[6]    Dkt. 2085 at ROA.145064.
[7]    Dkt. 2086 at ROA.145068.
[8]    ROA.129190.
[9]    ROA.129133.
[10]   ROA.129215.
[11]   ROA.129190.
[12]   Dkt. 2058 at ROA.129223 and Dkt. 2061 at ROA.129233 respectively.

Plaintiffs also filed a notice of appeal as to Dkt. 2055 and the subsidiary order Dkt. 1972 on June 21, 2024.[13] As is addressed above, Plaintiffs' Rule 59 motion regarding Dkt. 2055 may not be finally resolved as of the filing of this brief.

The District Court entered Dkt. 2042 on March 20, 2024.[14] The parties filed a joint motion to correct or amend Dkt. 2042 under Rule 59 on April 17, 2024.[15] The District Court entered an order resolving the joint motion to amend or correct (Dkt. 2056) on May 24, 2024.[16] On June 21, 2024, Defendants filed a motion to amend or correct Dkt. 2056.[17] As is addressed above, Plaintiffs' Rule 59 motion regarding Dkt. 2055 may not be finally resolved as of the filing of this brief.

This case is governed by a Consent Decree for which there is no anticipated final judgment at this time. The review sought would resolve an issue completely separate from the merits of this action. In the absence of the review sought, the Orders sought to be reviewed would be effectively unreviewable on appeal from a final judgment. Under these circumstances, this Court has authority to review the

---

[13] ROA.129229.
[14] ROA.129133.
[15] ROA.129160.
[16] ROA.129215.
[17] ROA.129233.

issues presented under the collateral order doctrine. *Walker v. United States Dept. of Housing and Urban Development*, 99 F.3d 761 (5th Cir. 1996).

## ISSUES PRESENTED

This appeal involves interim fee disputes in a post-decree epic civil rights case. This case stems from a Consent Decree approved in 1996 and a 2007 Corrective Action Order consisting of eleven Corrective Action Orders addressing different areas where Defendants were found to have not complied with the Consent Decree. This appeal covers eleven years of unresolved and mostly unpaid fees and four orders related to these fees. For 16 of approximately 30 years since the Consent Decree was agreed to, Defendants have delayed and resisted payment of all fees.

1. Whether it was error for the District Court to reduce the hourly rate for 3 of 4 attorneys by 20% without requiring Defendants to offer competent evidence to refute the well supported requested rate.

2. Whether it was error for the District Court to only slightly enhance the loadstar by a mere 2% without any supporting evidence and contrary to Plaintiffs' evidence of the enhancement required to attract competent counsel because of the history of fee delay and evidence of Defendants' strategy to resist fees under the circumstances of this case.

3. Whether it was error for the District Court to deny all fees for efforts to obtain a judicial decision regarding whether further action is required

under various Corrective Action Orders and to hinge the compensability of such efforts on their ultimate success, despite the Fifth Circuit's determination in *Frew v. Traylor*, 688 Fed.Appx. 249, 251 (5th Cir. 2017) that Plaintiffs are prevailing parties for such effort, even if unsuccessful, and are entitled to a reasonable fee.

4. Whether it was error for the District Court to deny as premature fees for efforts to seek a judicial decision regarding whether further action is required under various Corrective Action Orders because the ultimate question has not been addressed by the Court, despite the fact that these motions have been pending for a decade or more and one of the Corrective Action Orders having been the subject of a partially successful appeal to this Court.

5. Whether it was error for the District Court to deny all fees for all time entries that Defendants allege are vague without an adequate explanation of how there is not a single compensable hour in the more than 800 hours challenged by Defendants as vague, why only entries related to specific entries are compensable, or of why the District Court abandoned its prior

order to make a percentage reduction to account for potentially vague entries.

6. Whether it was error for the District Court to deny all fees related to Plaintiffs' motion for the appointment of additional counsel based on lack of success when that motion resulted in the partial payment for agreed hours in excess of $600,000 as an alternative remedy for the distress caused by the non-payment of fees for approximately a decade.

## STATEMENT OF THE CASE

**A**. **History of this case:**

This is a much-litigated Medicaid civil rights lawsuit, filed in 1993, in which a certified Plaintiff class of poor Texas children contend that Defendant Texas state agencies[18] operating Texas' Early, Periodic, Screening, Diagnosis and Treatment (often "EPSDT") program fail to adequately provide medical care class members are entitled to.[19] The parties entered into a detailed Consent Decree (the Decree) in 1996.[20]

When approving the Decree, the district court found that:

> [T]he proposed decree adequately addresses the complexity of the problems that class members present. ... [I]t is "outstanding" and should cause "dramatic improvement in class members" oral health. ... The proposed relief "is exemplary, the relief is well tailored to meet the needs of Medicaid-eligible children. ... [The decree] is a model for other child advocates throughout the United States who are seeking to improve the EPSDT programs in their states.[21]

Defendants understood their obligation to pay fees and did so between roughly 1995 and 2000.[22]

---

[18]   The Texas Health and Human Services Commission and its State Medicaid Director.

[19]   See Original Complaint, filed September 1, 1993, at Dkt 1, ROA.213. The current live pleading is the Third Amended Complaint, filed October 19, 1994, at Dkt 93, ROA.1221.

[20]   Dkt. 135 at ROA.1680.

[21]   Dkt. 133 at p. 27, ROA.1669.

[22]   ROA.112215.

In 2000, the District Court found Defendant broadly in violation of the Decree.[23] This was the beginning of years of litigation, during which Defendants decided not to comply with their obligations under the Consent Decree, including their obligation to pay fees (2000 to 2007). The Supreme Court upheld the enforceability of the Decree.[24] On remand, Defendants were again found to be broadly out of compliance with the Decree. This determination was affirmed by the Fifth Circuit.[25]

Having exhausted their challenges to the enforceability of the Decree, Defendants agreed in 2007 to a Corrective Action Order (CAO) consisting of eleven parts covering specific areas of non-compliance with the Decree.[26] Defendants also agreed after seven years of non-payment to an order for fees and expenses accumulated between 2000 and 2007.[27]

When the district court approved the 2007 CAO it affirmed that the Decree remained in effect and concluded "it is unlikely that the Court could have devised a better, more practical remedy than the [Corrective Action] Order currently at

---

[23]  *Frew v. Gilber*t, 109 F.Supp.2d. 579 (E.D. Tex. 2000).

[24]  *Frew v. Hawkins,* 540 U.S. 431 (2004). Note that the Supreme Court looked favorably on the Decree.

[25]  *Frew v. Hawkins*, 401 F.Supp.2d 619 (E.D. Tex. 2005 and *Frazar v. Ladd*, 457 F.3d 432 (5th Cir. 2006).

[26]  Dkt. 637 ROA.15966-16037.

[27]  ROA.17774.

issue."[28] The CAO "requires Defendants to do things that are possible and that make sense. ... This approach is something that works and is efficient. ... [The CAO] will bring significant relief to the class."[29] In this case the issues are "complex, ... [t]he Corrective Action Order appropriately addresses this complexity because it requires Defendants to make improvements regarding a broad range of problems so that class members can obtain the health care that they need."[30]

Though each part of the CAO is unique, the CAOs generally follow a pattern. Typically, the CAOs require Defendants to conduct a study to establish a baseline, assess problems in that area of non-compliance, and perhaps evaluate solutions. After the first study or assessment, the CAO then generally require Defendants to take steps to correct the identified problems. After a time another assessment is usually conducted to assess progress and identify solutions to problems revealed by the follow up study. As a final step, all of the CAOs require the parties to confer to determine whether further action is needed. If parties cannot agree within a specified time frame, either party can obtain a court determination of whether further action

---

[28]   Dkt. 663 at p. 1, fn.1, ROA.18038., and p. 58, ROA.18095.

[29]   Dkt. 663 at p. 12., ROA.18049. (Quotation marks omitted, quoting former Defendant Commissioner Hawkins).

[30]   Dkt. 663 at p. 13., ROA.18050. The Fifth Circuit opinion, at p. 3, also recognized the breadth of the Decree's goals ("[E]nhance[ing] the availability of health care services, eliminate[ing] barriers that have the effect of preventing access to services, and more effectively inform[ing] recipients that services are available and important to their current and future health.") and objectives ("The Decree dictated that the state meet a range of objectives," with examples).

is required.[31] The District Court characterizes this as a potential end point to the CAOs.[32]

Most of the CAOs have gone through this process and most of the fees at issue in this appeal involve time spent getting information to determine whether Plaintiffs can agree that no further action is required and in obtaining a judicial determination when Plaintiffs could not agree with Defendants position. These are complex and time consuming tasks. For instance, Defendants produced more than 300,000 pages of documents in discovery related to just one of the CAOs.[33] Defendants motions and responses commonly contain more than a thousand pages of exhibits.[34]

Plaintiffs have achieved practical successes as well. Defendants represented to the district court that for 2008-2013 they appropriated $1.8 billion to provide benefits to the Plaintiffs as a result of the 2007 CAO in this case.[35] On appeal,

---

[31] The applicable provision can be found at: Case Management CAO (Dkt. 637-2 at ROA.15977); Lagging Counties CAO (Dkt. 637-3 at ROA.15982); Checkups CAO (Dkt. 637-4 at ROA.15988); Health Outcomes Measures and Dental Assessment CAO (Dkt. 637-5 at ROA.15992 and ROA.15993-4); Managed Care CAO (Dkt. 637-6 at ROA.16001); Prescription and Non-Prescription Medication and Medical Equipment and Supplies CAO (Dkt. 637-7 at ROA.16012); Provider Supply CAO (Dkt 637-8 at ROA.16024); Toll Free Numbers CAO (Dkt. 637-11 at ROA.16031); Transportation CAO (Dkt. 637-12 at ROA.16035-36); and Amended Outreach and Informing CAO (Dkt. 746 at ROA.29005).

[32] ROA.18553.

[33] ROA.90484.

[34] As just one typical example, Defendants Vacate the Dental Assessment Portion of the Health Outcomes Measures and Dental Assessment Corrective Action Order and Related Decree Provisions contained was 1,863 pages including exhibits. ROA.71041-72904. It should be noted that this motion concerned just part of one of the eleven CAOs.

[35] Dkt 1640, at p. 13, ROA.105837.

Defendants contended that they spend over $500 million per year complying with the relief obtained in this case.[36] The amount of the fees at issue is miniscule in comparison to the results Plaintiffs have obtained in this case.

**B. Background facts related to fees:**

Fees in this case are covered by the agreed order governing the annual resolution of fees (Dkt. 660)[37] and this Court's opinion at *Frew v. Traylor*, 688 Fed.Appx. 249 (5th Cir. 2017)[38].

Simultaneously with the entry of the CAO, the parties agreed to Dkt. 660 to resolve years of unpaid fees and to create a process for resolving accrued fees on an annual basis.[39] Paragraph 3 of this order requires the parties to attempt each year to reach an agreement of the amount owed for the prior year.[40] Dkt. 660 allows for partial agreement as to the amount owed.[41] Where only partial agreement can be reached, Dkt. 660 allows for the submission of both unopposed and opposed motions for fees for the prior year.[42] Following the entry of Dkt. 660, the parties submitted

---

[36]  See Appellants' Brief filed in 5th Cir. No. 14-41232 at p. ii.
[37]  ROA.17774.
[38]  ROA.108133-149.
[39]  ROA.17774.
[40]  ROA.17776.
[41]  ROA.17776.
[42]  ROA.17776.

unopposed motions for fees for every year through 2012 that at least partially dealt with the fees sought by Plaintiffs.[43] Defendants have not agreed to submit a joint motion at least partially covering the fees sought for any year since 2012.

*Frew v. Traylor* involved an award of Plaintiffs' interim fees for work done in 2012 seeking court resolution of a dispute regarding the requirement for further action at the conclusion of one of the CAOs commonly referred to as the "Lagging Counties CAO."[44] Though Plaintiffs' motion was not successful, the procedure was part of the CAOs enforcement mechanism and Plaintiffs sought fees. The matter was fully briefed and the district court initially awarded the fees.[45] On appeal, the Fifth Circuit found that:

> Plaintiffs here seek attorneys' fees for a discrete set of motions contemplated in the 2007 Corrective Action Order for which they indisputably obtained prevailing party status. Negotiations and motion practice concerning the status of the checkup reports and lagging counties provision come 2011 was part of what Plaintiffs achieved as a result of their 2007 success. This established framework makes the motions at issue more like a compliance or dispute resolution procedure that was a part of the parties' agreement than a new, distinct motion to obtain a form of relief beyond what was established in the original decree. Defendants argue that unlike the mandatory negotiation provision, the Corrective Action Order did not require the filing of a motion in 2012, and Plaintiffs should thus not receive fees when their decision to file a motion ended up not being a sound one. At a minimum, however, part of what Plaintiffs achieved in 2007 was the

---

[43]  ROA.20529, ROA.25245, ROA.27568, ROA.30549, ROA.38286, ROA.51724, and ROA.62165.

[44]  Dkt 922, ROA.50784.

[45]  Dkt 1248, ROA.68274. See also Plaintiffs Fee Motion (Dkt 1120, ROA.59644.), Defendants' Response (Dkt. 1127, ROA.61187), and Plaintiffs' Reply (Dkt. 1131, ROA.61299.)

opportunity to have the Court decide whether the "checkup reports and lagging counties" plan should continue. Prevailing party status obtained in 2007 thus extended to the final step contemplated in the Corrective Action Order for the lagging counties provision. See Walker, 99 F.3d at 767 ("Monitoring a consent judgment previously entered entitles a plaintiff to attorneys' fees.").

*Frew v. Traylor*, 688 Fed.Appx. 249, 251 (5th Cir. 2017)(Internal footnote omitted).

Consequently, the fees at issue were remanded for the district court to conduct the reasonableness analysis considering the degree of overall success obtained as required by *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)("Hensley").

## C.     The history of the fees at issue:

### 1.     History related to 2011-2021 fees (Dkt. 1972 and Dkt. 2055).

Defendants paid no fees for hour incurred between 2012 and 2022. Defendants made a small partial payment for uncontested fees incurred in 2012 and 2022.[46] However, no fees were paid for approximately ten years until Defendants paid no fees, even for uncontested hours, until the Court ordered Defendants to make a partial payment for uncontested hours at the end of 2023.[47]

The process of seeking fees was postponed while *Frew v. Traylor* was on appeal with the understanding that the outcome of that appeal would likely be crucial to resolving ongoing fee disputes.[48]

---

[46]  ROA.112215.

[47]  ROA.126347.

[48]  See for example ROA.107359.

Following the issuance of the opinion in *Frew v. Traylor* Plaintiffs filed a fee motion covering 2011-2016 in July of 2018.[49] Defendants' response to this motion did not contest Plaintiffs' prevailing party status for fees sought for unsuccessful efforts to obtain an order requiring Defendants to take further action pursuant to various CAOs.[50] Instead, Defendants' responses argued that the reasonableness of fees should be based on the success of each motion rather than Plaintiffs' overall success as required by *Hensley*.

Subsequently, Plaintiffs filed separated fee motions for fees incurred in 2017-2018,[51] 2019,[52] 2020,[53] and 2021.[54] Defendants' responses to these motions continued to maintain that for unsuccessful efforts to obtain an order requiring Defendants to take further action pursuant to various CAOs the reasonableness of fees should be based on the success of each motion rather than Plaintiffs' overall success as required by *Hensley*.[55] At no point did Defendants argue that Plaintiffs had sought a judicial determination regarding whether further action was required

---

[49]  Dkt. 1640 at ROA.110939.

[50]  Dkt. 1648 at ROA.112213-14 and Dkt. 1656 at ROA.112770.

[51]  Dkt. 1671 at ROA.114104 (filed April 30, 2019).

[52]  Dkt 1740 at ROA.117088 (filed July 1, 2020).

[53]  Dkt. 1833 at ROA.120414 (filed May 17, 2021).

[54]  Dkt. 1905 at ROA.124455 (filed May 5, 2022).

[55]  Dkt. 1673 at ROA.114293-94; Dkt. 1686 at ROA.114541-43; Dkt. 1749 at ROA.117745-46; Dkt. 1850 at ROA.120699-700; and Dkt. 1908 at ROA.124585-86.

for any of the CAOs in bad faith or that Plaintiffs knew before seeking a judicial determination that their efforts would be unsuccessful.[56]

After nearly a decade without an award of fees in this litigation, Plaintiffs filed a motion for appointment of additional counsel in June of 2022.[57] The District Court ordered the partial payment of certain uncontested fees and denied Plaintiffs' motion for the appointment of additional counsel as moot because the payment of fees addressed the concerns raised by Plaintiffs' motion.[58] This ultimately resulted in the award and payment of $674,083.20 in uncontested fees incurred between 2011 and 2021 with the ability to seek additional amounts based on the District Court's subsequent determination of the reasonable hourly rate.[59]

On February 10, 2023, the District Court issued Dkt. 1972 which sought to collectively address the legal questions raised by the briefing regarding fees incurred between 2011 and 2021 and to create a framework for ordering the payment of fees during this period.[60] This order found that the degree of success analysis required by *Frew v. Traylor* should refer to the success of the CAO motion practice rather than

---

[56]    Dkt. 1673 at ROA.114293-94; Dkt. 1686 at ROA.114541-43; Dkt. 1749 at ROA.117745-46; Dkt. 1850 at ROA.120699-700; and Dkt. 1908 at ROA.124585-86.

[57]    Dkt. 1914 at ROA.124689.

[58]    ROA.126093.

[59]    ROA.126347.

[60]    ROA.127012.

the success of the case as a whole.[61] The Distict Court further denied as premature all time related to motions still pending before the Court.[62] The order also found that the reasonable hourly rate for all attorneys for all work at the reduced rate of $400 per hour.[63] Because of the delay in awarding fees, the District Court found that a 2% enhancement should apply.[64] The District Court also applied a percentage reduction by year for vague time entries.[65]

By its own terms, Dkt 1972 would only become final upon the entry of a subsequent order awarding fee based on the parties categorization of time entries submitted with Plaintiffs' motions.[66] To this end the Court ordered the parties to file a joint supplemental brief and provide information for each time entry to allow the Dkt. 1972 framework to be applied.[67]

The parties filed their joint supplemental brief on July 21, 2023 with a spreadsheet containing the entry specific information required by Dkt. 1972.[68] This

---

[61]  ROA.127039-41.

[62]  ROA.127054.

[63]  ROA.127035-39. A chart summarizing the amounts and rates sought by Plaintiffs is at ROA.127057.

[64]  ROA.127053-54.

[65]  ROA.127054.

[66]  ROA.127055.

[67]  ROA.127055.

[68]  Dkt. 2023 at ROA.128502.

joint brief and the spreadsheet were later supplemented to correct errors in the originally filed spreadsheet.[69]

The District Court entered an order as to 2011-2021 fees (Dkt. 2055) on May 24, 2024.[70] This order primarily granted fees for hours that the parties agreed are payable.[71] Virtually all hours related to pending motions was denied as premature.[72] All fees related to unsuccessful motions to determine whether further action were also denied, except for instances where Plaintiffs agreed with Defendants to dissolve a CAO or portions of the Decree.[73] The District Court also denied all fees for all of the time that Defendants claimed to be vague in the parties joint motions instead of applying the percentage reduction adopted by the District Court in Dkt. 1972.[74] This reversal of course would increase the number of hours excluded based on vagueness by approximately 200 hours without explanation, changing the specificity required by time entries without prior notice.[75] The District Court did not revisit either the hourly rates found to apply in Dkt. 1972 or the 2% enhancement.

---

[69]  Dkt. 2027 at ROA.29090.

[70]  ROA.29190.

[71]  ROA.129192-94. The order awards $1,179,234.24 ($721,588.80+ $457,645.44) based on agreement of the parties out of a total award of $1,268,647.44.

[72]  ROA.129194-203.

[73]  ROA.129204-211.

[74]  ROA.129212.

[75]  Multiplying the percentage reduction to the applicable annual hours summarized in Dkt. 1972 at ROA.127058 results in a reduction of 647.6 hours. After conducting a review of all hours, Defendants still objected to 890.36 hours as too vague. ROA.129212.

**2.      History related to 2022 fees (Dkt. 1942 and Dkt. 2056).**

On June 5, 2023, Plaintiffs filed their motion for contested 2022 fees.[76] This motion sought to address certain aspects of Dkt. 1972, specifically aspects that would prevent counsel from representing the class. This motion sought $265,290 in fees for 2022.[77]

The District Court entered Dkt. 2042, an Order regarding 2022 fees, on March 20, 2024, prior to entry of the order addressing fees for 2011-2021 at Dkt. 2055.[78] In this order, the District Court declined to reconsider any aspects of Dkt. 1972 as applied to the 2022 fees.[79] Under the Dkt. 1972 framework, the District Court denied as premature all fees related to the provider supply CAO and the toll free number CAO as being related to a still pending motion.[80] The District Court then permanently denied all time related to Plaintiffs' motion seeking appointment of additional counsel and their unsuccessful efforts to seek further action related to the Outreach and Informing CAO.[81] The District Court also denied the request for an

---

[76]   Dkt. 2012 at ROA.128276. The parties were able to agree to the payment of some fees for 2022 that were the subject of an unopposed motion and separate order. See Dkt. 2001 at ROA.127679.

[77]   ROA.128278.

[78]   Dkt. 2042 at ROA.129133.

[79]   ROA.129133-34.

[80]   ROA.129134-35.

[81]   ROA.129135-36.

hourly rate of $500 per hour for Mr. Garrigan and awarded $400 per hour for all attorneys.[82]

The parties filed a joint motion to correct or amend the Court's order on 2022 fees under Rule 59 on April 17, 2024.[83] In their motion, the parties agreed that the Toll Free Number CAO was no longer pending because the parties had agreed to dissolve the CAO and the District Court had entered an order to that effect prior to the issuance of the fee order.[84] The parties, however, disagreed as to whether fees should be awarded for time spent on the relevant motion.[85] On May 24, 2024 (the same day that the District Court issued its order regarding 2011-2021 fees), the District Court issued an order awarding fees for time spend on the Toll Free Number CAO in 2022 based on Plaintiffs' prevailing status for efforts anticipated by a CAO.[86]

On June 21, 2024, Plaintiffs filed a motion to amend Dkt. 2055 (fee order for 2011-2021)[87] and Defendants filed a motion to amend Dkt. 2055 and Dkt. 2056 (order on the parties' joint motion to amend Dkt. 2042).[88] Both Dkt. 2055 and Dkt.

---

[82]  ROA.129140-41.
[83]  ROA.129160.
[84]  ROA.129161.
[85]  ROA.129161-63.
[86]  Dkt. 2056, ROA.129217-18.
[87]  Dkt. 2058 at ROA.129223.
[88]  Dkt. 2061 at ROA.129233.

2056 are orders appealed by the parties.[89] The District Court issued an order addressing both Rule 59 motions on January 3, 2025 (Dkt. 2080).[90] However, the District Court's order on the parties respective Rule 59 motions may not be considered final since it ordered the parties to confer and file a joint notice of any additional relief that might be required for this appeal.[91] Pursuant to this requirement, the parties filed a joint notice on January 31, 2025.[92] On that same day, Plaintiffs' filed a Rule 59 motion as Dkt. 2080.[93] The District Court has not yet entered an order finalizing Dkt. 2080 or addressing Plaintiffs motion to amend Dkt. 2080.

---

[89]   Dkt. 2059 at ROA.129229, Dkt. 2060 at ROA.129231, and Dkt. 2064 at ROA.129246.

[90]   Dkt. 2080 at ROA.145053.

[91]   See. *Green Tree Servicing, L. L.C. v. Charles*, 872 F.3d 637, 639-640 (5th Cir. 2017).

[92]   Dkt. 2085 at ROA.145064.

[93]   Dkt. 2086 at ROA.145068.

# SUMMARY OF THE ARGUMENT

The fee awards that are the subject of this appeal fundamentally fail to meet the first objective of fee awards to ensure the availability of competent counsel. This is particularly so because of the history of lengthy fee delay and resistance paying fees by Defendants.

The District Court reduced the hourly rate of three of four attorneys from $500 per hour to $400 per hour. This reduction was made despite findings that Plaintiffs had adequately supported their requested rates and that Defendants had not offered any competent controverting evidence. The Fifth Circuit has long held that the rate established by Plaintiffs should be applied absent adequate controverting evidence. It was error for the District Court to reject Plaintiffs' requested rates under these circumstances and the Court fails to provide an adequate explanation to permit review for the reasons this was done.

The slight 2% enhancement of the lodestar is inadequate to address the delay and undesirability of this case because of Defendants resistance to paying fees. The District Court does not provide any evidence that would support a review of the arbitrary 2% as opposed to a more objective measure. The slight enhancement adopted by the District Court does not in any way compensate for the time value of money for delaying fees nearly a decade or the undesirability of Defendants

consistent resistance to fees. As such, the 2% enhancement, is simply insufficient to ensure competent counsel.

In *Frew v. Traylor*, 688 Fed.Appx. 249, 251 (5th Cir. 2017) this Court found that Plaintiffs are prevailing parties for purposes of their efforts to obtain a judicial decision as to whether further action is required at the last step of a Corrective Action Order. The District Court ignored this instruction and found that Plaintiffs' efforts to obtain such decisions regarding various CAOs was not part of the relief agreed to by the parties in the CAO. The District Court also erred in asserting without evidence that Defendants somehow knew in advance that these efforts would be unsuccessful.

The District Court also erred in finding that Plaintiffs request for fees related to some as yet undecided CAO motions are premature. This amounts to a total denial of these fees. The motions have been pending for more than a decade, and it is uncertain when they may resolved. The litigation regarding the Provider Supply CAO is particularly illustrative. Since 2011, the Provider Supply CAO has been subjected to two motion practice series, a partially successful appeal to this Court, and a successful resistance to resist Defendants' efforts to request that the District Court clarify its order to reverse this Court's opinion. Despite this history, the District Court found that it could only award fees for a small portion of the time expended. This is an erroneous denial of fees for efforts anticipated by the Corrective

Action Orders and contrary to *Frew v. Traylor*, 688 Fed.Appx. 249, 251 (5th Cir. 2017).

The District Court's denial of all fees that Defendants' claim are too vague is not supported by sufficient evidence to permit a meaningful review of the decision. The requirement that all time entries be specifically linked to specific motions and issues is contrary to common practice and *Hensley's* observation and much of the work in a complex case is devoted to the case as a whole rather than discrete issues. The District Court does not provide sufficient explanation from abandoning the earlier finding that a percentage reduction was appropriate to account for any insufficiently supported time entries.

Finally, the District Court erred in denying all time related to a motion for the appointment of additional counsel based on a lack of success. While the motion was technically denied as moot, it resulted in the award of more that $600,000 as partial payment of agreed hours and as an alternative to the relief requested in Plaintiffs' motion. It was error for the District Court to characterize these effors as unsuccessful.

**ARGUMENT**

The attorney fee awards on appeal, particularly in light of the case's fee history, are inadequate as a matter of law because the uncontested evidence is that the awards are insufficient to attract competent counsel.[94]

During the period covered by this appeal (2011-2022) Plaintiffs sought award of $ $6,100,116.33, not including expenses or enhancement.

The Supreme Court's first rule for reasonable statutory attorney fee awards under 42 U.S.C. §1988 is that a reasonable fee be sufficient to induce capable attorneys to represent plaintiffs in meritorious civil rights cases.  in a case providing for in of fee awards stated in *Perdue v. Kenny A.*, 559 U.S. 542 (2010).

## A.    Standard of Review

In evaluating whether the district court abused its discretion to award attorney's fees, this Court reviews the factual findings supporting the grant or denial of attorney's fees for clear error and the conclusions of law underlying the award *de novo*.[95] The traditional threshold concept of prevailing-party status for awards under fee-shifting statutes such as § 1988 is a legal issue subject to *de novo* review. Additionally, whether the District Court complied with this Court's mandate in *Frew*

---

[94]    Appellants ask that the Court keep in mind that the violations of the mandate rule in this case are best understood in the context of Defendants strategy to prevail by delaying and denying fees in this case. See the Statement of the Case above at B.2. Such a strategy has the prospect of allowing Defendants to prevail by denying access to the courts. See P*erdue v. Kenny A.*, 559 U.S. 542, 555-556 (2010).

[95]    Id.

*v. Traylor*, 688 Fed.Appx. 249 (5th Cir. 2017) is a question of law subject to *de novo* review.

**B. Defendants failed to produce evidence that plaintiffs' requested and supported routine rate within the range of market rates was unreasonable, so it was clear error for the district court to award a lower rate.** *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995).

This appeal seeks review of two awards of Plaintiffs' attorney fees, one for their work from 2011-2021[96] and one for their work during 2022[97], both of which were governed by the district court's Dkt. 1972 Order establishing its framework for awarding fees,[98] in which the District Court departed from the controlling law for determining reasonable fees, resulting in application of an inappropriately reduced hourly rate.

The Plaintiffs' initial burden in seeking a reasonable fee includes producing evidence that their requested rate is in accord with prevailing market rates in the relevant community:

> [C]ourts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, **the burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation**. A rate determined in this

---

96  ROA.129190.
97  ROA.129133.
98  ROA.127012.

way is normally deemed to be reasonable, and is referred to-- for convenience--as the prevailing market rate.

*Blum v. Stenson*, 465 U.S. 886, 895 and fn.11 (1984) (emphasis added).

Doing so requires the district court to consider the requested rate used in awarding a reasonable hourly rate:

> When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, *the court should consider this rate when fixing the hourly rate to be allowed*. When that rate is not contested, it is *prima facie* reasonable.

*Islamic Center of Mississippi v. City of Starkville*, 876 F.2d 465, 469 (5th Cir.1989) (emphasis added).[99]

This rule is also applied in other circuits. In *McCutcheon v. America's Servicing Co.*, 560 F.3d 143 (3rd Cir. 2009) the Third Circuit held that:

> In an attorneys' fees determination, once a prevailing party has produced sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a *prima facie* case the opposing party bears the burden of producing record evidence that will contest this rate. The district court cannot decrease a fee award based on factors not raised at all by the adverse party.[100]

To contest such a requested rate, the burden shifts to the opposing party to provide *evidence* that the requested rate is *unreasonable*.[101] In this case the district

---

[99]  See also *League of United Latin American Citizens No. 4552 (LULAC) v. Roscoe Independent School Dist.*, 119 F.3d 1228 (5th Cir. 1997); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995) and; *Powell v. C.I.R.*, 891 F.2d 1167, 1173 (5th Cir. 1990).

[100]  Internal citations and quotations omitted.

[101]  *Islamic Center*, 876 F.2d at p. 469.

court found that Plaintiffs met their burden, but did not hold Defendants to their burden to provide evidence of unreasonableness when applying a reduced rate.

In its order, the District Court first considered the reasonableness of Plaintiffs requested $500 hourly rate, based on evidence of prevailing market rates in the pertinent jurisdiction for lawyers with comparable skill, experience and reputation.[102] The district court expressly and favorably relied on Plaintiffs' supporting declarations of their own counsel and at least four other lawyers (including one who had formerly represented Plaintiffs) who represent parties in complex federal litigation in the Eastern District of Texas, and on evidence of fee awards in other cases[103] The district court recognized Plaintiffs' submitted

---

[102]  ROA.127035-37.

[103]  Id. At ROA.127036, the district court wrote:

> Thus, in support of the *requested rates*, Plaintiffs offered the affidavits of Otis Carroll, Samuel Baxter, Roger Sanders, and Jane Swanson…. These individuals are trial lawyers whose practices include representing parties in complex federal litigation, including antitrust, commercial, or civil rights litigation, in the Eastern District of Texas.

> ROA.127036 (References and footnotes omitted). The district court also cites to Plaintiffs' counsels' declarations "that further confirm that these rates represent their customary rates", referring to the declarations at: ROA.110959 (Attorney Zinn Declaration); ROA.111094 (Attorney Swanson Declaration); ROA.111617 (Attorney Garrigan Declaration), and; ROA.111722 (Attorney Craig Declaration). Plaintiffs evidence includes other fee awards for Plaintiffs' counsel, with rates progressing from $400 to $500 for work done as far back as the mid-90s. The Garrigan Declaration identifies a few pertinent awards demonstrating his fee history (ROA.111626), including: a 2008 agreement with the Office of Texas Attorney General (currently representing Defendants in this case) to pay Garrigan a fee calculated at a $400 hourly rate for *all* of his time billed in that Eastern District civil rights case (for work going back to at least 2004); a 2009 contested fee award calculated at a $400 hourly rate for all of the time he billed (going back to the mid-90s) in a complex class action discrimination case, affirmed by this Court in *McClain, et al v. Lufkin Ind*., 649 F.3d 374, 378-80 (5th Cir. 2011), and; that in 2017, for the first time, Garrigan was awarded a fee calculated at the rate of $500

declarations were the type of evidence used to determine reasonable fee rates, were submitted by qualified witnesses, and that they supported Plaintiffs' requested rate of $500 as appropriate and within the pertinent range of customary rates for complex civil litigation in the Eastern District of Texas. Defendants submitted no affidavits, declarations, or other evidence refuting Plaintiffs' evidence. The district court also rejected Defendants arguments attempting to disparage Plaintiffs' witnesses, and viewed positively the evidence of Plaintiff counsels' skill, experience and reputations.[104]

The District Court considered and rejected Defendants' argument that Plaintiffs' fees should be limited to an hourly rate of $240, based solely on Defendants' characterization of this case as "healthcare litigation", instead of a complex civil rights litigation, in an attempt to have the district court apply an hourly rate in a state bar 2015 "Hourly Rate Fact Sheet" to the fees at issue.[105] In dismissing Defendants' argument, the District Court recognized that, "As Plaintiffs correctly assert, Defendants offer no reason for their suggestion that Plaintiffs' rates should be based on the hourly rates of "healthcare litigation attorneys," instead of rates for

---

per hour for all of his time spent during the pertinent period in the case *Morrow v. City of Tenaha*, C. A. 2:08-0288 (11/15/2017) (Gilstrap, J.). Garrigan's Declaration finally shows that he was again awarded another contested fee calculated at a $500 rate in *Fisher v. Lufkin Ind., Inc.*, C.A. 2:12-cv-423-RWS-RSP (Dkt 127).

[104]   ROA.127036-37 The district court favorably referred to other court's favorable opinions of Plaintiffs' counsel in the *McClain v. Lukin* and *Morrow v. City of Tenaha* cases.

[105]   ROA.127037-38.

"complex civil rights class action in this district, or any other district for that matter,"[106] and noted with disapproval that the Fact Sheet didn't have a single indication of reliability and was several years out of date without explanation. The district court also found the Plaintiffs' "submitted declarations more adequately represent the customary rates in this field" than the Defendants' arguments. Defendants did not submit any evidence that Plaintiff's requested rate of $500 was unreasonable.

Having found Plaintiffs' requested and customary $500 per hour rate well supported and within the range of prevailing market rates, and that Defendants' do not offer any reason sufficient to establish a lower rate within the range for complex litigation in the Eastern District, the district court still determined to use a reduced rate of $400 an hour to calculate Plaintiffs' counsels' fees. [107]

To facilitate review, a fee award must be accompanied by clear explanation for the reasons for the award.[108] The District Court violates this rule by failing to provide a clear explanation for the reduced rates.

---

[106] ROA.127038.

[107] ROA.127036-37. District court establishment of the reduced $400 rate in Dkt 1970, ROA.127012, particularly ROA.127035-39 (rationale). District court application of its reduced rate to 2022 fees, Dkt 2042, ROA.129133, particularly at ROA.129140-41; ROA.2011-20. District court application of its reduced rate to 2012-2021 Fees, Dkt 2055, ROA.129190, particularly at ROA.129192-94, ROA 129200, 203, 211.

[108] *Islamic Center of Mississippi, Inc. v. City of Starkville, Miss*., 876 F.2d 465, 468 (5th Cir 1989).

If a defendant wants to challenge a Plaintiff's routine requested rate that is within the range of market rates, it must produce evidence that the requested rate is unreasonable. Here, the district court has already found the Defendants have not done so. The District Court's failure to require Defendants to meet this requirement, or otherwise consider and address it, is error.[109]

Regardless of Defendants' failure to produce evidence of unreasonableness, the awarded $400 rate is below Plaintiffs' supported requested rate of $500, which requires adequate explanation. Without explanation, the district court points out that the reduced $400 rate is "only $55 more than the median of Defendants' proposed rate of $240 from the "Hourly Rate Fact Sheet" (that the district court had dismissed as not relevant or reliable ) and the $450 lower limit of rates for complex litigation (apparently a figure from 2009 ), that the district court considered "supporting reasonableness." This information only confirms that the reduced $400 rate is below the requested and properly supported $500 rate and below the lower range for prevailing rates fourteen years earlier, without providing a clear explanation that is supported by evidence for the reduction. The lack of clear explanation also independently constitutes error.

---

[109]   *Islamic Center*, 876 F2d at 468.

**C.    A two-percent (2%) enhancement awarded for the ongoing delay in payment of fees earned since 2011 is unreasonably small and substantially contributes to a fee history that effectively prevents competent counsel from assisting with representation of the plaintiffs.**

The District Court awarded a "slight enhancement" of two-percent (2%) to account for the undesirability of this case.[110] The District Court does not offer any explanation of how this enhancement was calculated or how such a "slight" flat enhancement could account for the delay of nearly a year and a half in the payment of some of the fees at issue in this appeal.

The Supreme Court recognizes the purpose of §1988 "is to ensure effective access to the judicial process for persons with civil rights grievances,"[111] and has more recently emphasized that this purpose is the first of its six important rules regarding reasonableness of a fee award: "a reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case."[112] Access to the courts to enforce important federal rights is necessary to the efficacy of those rights. A fee award that is insufficient to attract competent counsel is simply not a reasonable fee.

The Supreme Court has expressed concerns that Defendants would use delay to frustrate civil rights enforcement:

---

[110]   ROA.127050-54.

[111]   *Hensley v. Eckerhart,* 461 U.S. at p. 429.

[112]   *Perdue v. Kenny A*., 559 U.S. 542, 552 (2010). See also *Blum v. Stenson*, 465 U.S. at p.897.

40

Defendants--who generally have deeper pockets than plaintiffs or their lawyers, and whose own lawyers may well be salaried and thus have lower opportunity costs than plaintiffs' counsel--have much to gain simply by dragging out litigation. The longer litigation proceeds, with no prospect of improved results, the more pressure plaintiffs and their attorneys may feel to compromise their claims or simply to give up.

*Hensley*, concurrence at 461 U.S.at 456.

The Supreme Court recognizes that fee awards should be adjusted or enhanced to account for a "delay factor,"[113] the expected delay in fee recovery while prevailing party status is established, which is routinely dealt with by using current, higher rates to establish the lodestar amount.  Other unusual, rare, or unexpected lengthy delays may justify other enhancements to account for the resulting lost time-value of fee payments, "particularly where the delay is unjustifiably caused by the defense."[114] This suggests that delay adjustments do not require a showing of culpability, but such evidence may affect an enhancement. In the *Islamic Center* case, this Court remanded for consideration of, and explanations for, a possible delay enhancement reflecting the lost time-value of delayed payment, even if current rates had been used to calculate the lodestar.[115]

---

[113] *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 483 U.S. 711, 716 (1986) and *Perdue v. Kenny A.*, 559 U.S. at 542, 555-556.

[114] *Perdue v. Kenny A.*, 559 U.S. 542, 556. See also *Islamic Center*, 876 F.2d at 465 (lost time-value on money due to delay is recoverable).

[115] *Islamic Center*, 876 F.2d 473-74. The delay at issue seems to have been the expected delay for the time it took to become a prevailing party, not an unexpected or extraordinary delay as is the case here.

The amount of an enhancement for delay should be calculated by a reasonable, objective method capable of review, such as applying a standard rate of interest.[116] In the *Islamic Center* case, this Court remanded for consideration of, and explanations for, a possible delay enhancement reflecting the lost time-value of delayed payment, even if current rates had been used to calculate the lodestar.[117] Two-percent does not suffice.

The fees at issue in this appeal have been accruing since 2011. The District Court's flat two-percent enhancement does not in any way account for the lost time value of fees that have gone unpaid for nearly a decade and a half. This allows Defendants to benefit substantially from the lengthy delay in fees. The District Court's orders have not given this Court any basis for reviewing its arbitrary 2% enhancement. This Court should therefore remand for a determination of whether a less arbitrary enhancement such as Texas' judgment interest rate should be applied.

Plaintiffs have submitted uncontradicted evidence that Defendants have strategically resisted payment of fees to prevent Plaintiffs from monitoring and disputing Defendants' claims of compliance in this case (i.e. to prevent Plaintiffs

---

[116] *Perdue v. Kenny A.*, 559 U.S. 542, 555.

[117] *Islamic Center*, 876 F.2d 473-74. The delay at issue seems to have been the expected delay for the time it took to become a prevailing party, not an unexpected or extraordinary delay as is the case here.

from fulfilling their monitoring responsibilities.).[118] Defendants refused to submit any agreed amounts for undisputed hours to the District Court in eight out of the eleven years of fees at issue in this appeal. This contradicts Dkt 660 (the agreed order governing fees) which anticipates submitting agreed amounts and disputed amounts separately.

The record in this case reflects that Defendants treat Plaintiffs' entitlement to attorney fees as something Defendants are free to resist to deprive Plaintiffs from performing their post-decree responsibilities to monitor and scrutinize Defendant's self-reported claims of compliance.[119] Mr. Garrigan was designation as lead counsel in January 2014 nd awas approved in part based on the availability of fees to sustain this litigation.[120] Shortly thereafter on August 28, 2014 Defendants abruptly

---

[118]   Much of this evidence is set forth in evidentiary and narrative form in Plaintiffs' submitted declarations of counsel Timothy B. Garrigan supporting their fee requests, including: ROA.111617, his declaration for 2011-2016; ROA.114154, his declaration for 2017-2018 fees; ROA.117111, his declaration for 2019 fees; ROA.120432, his declaration for 2020 fees: ROA.124474, his declaration for 2021 fees; ROA.128295, his declaration for 2022 fees including his repetitiously included copy of his declaration for 2021 fees at ROA.128322. Defendants may seek to recharacterize some of the facts reflected in Plaintiffs' supporting declarations and affidavits, but rarely, if ever, do they refute particular facts or produce contrary evidence.

[119]   See, e.g., ROA.114284-5, at fn.6, Defendants reveal their view that they have the legal right to dispute fees requested by Plaintiffs, because challenging fees will prevent Plaintiffs from performing their duty to monitor and dispute Defendants' claims of compliance. While Defendants imply they only challenge *unreasonable* fees, the result of their fee resistance has prevented any payment of fees from 2000 to 2007 and again from 2012 to 2023, when Defendants finally satisfied an order to pay a little less than 12% of the lodestar Plaintiffs had earned from 2011 to 2023. Defendants don't just challenge unreasonable fees, they challenge all fees. And by doing so, they have demonstrate their ability to delay all fees for years at a time.

[120]   ROA.124479-81.

repudiated Dkt. 660 and refused to agree to any fees.[121] Defendants refused to pay even for undisputed hours until ordered to do so in 2023.[122] Since then, Defendants' also agreed to pay a small amount of undisputed fees for 2022.[123] These are the only fees in the last decade that Defendants have paid.

This pattern of fee resistance is supported by the history of significant fee droughts in this litigation. In addition to the more than a decade of fees at issue in this appeal, Defendants also did not pay any fees for the years between 2000 and 2007.[124] This is what necessitated the entry of Dkt. 660 requiring the payment of back fees and the creation of a process to ensure that fees were paid annually.

Of the approximately 30 years since the Consent Decree was agreed to, Defendants have refused to pay any of the fees incurred for 16 of those years, more than half. This includes the nine years between 2012 and 2022, years in which Defendants agreed to a partial payment.

Because of the history of lengthy fee payment droughts in this case and Defendants' refusal to pay at least some amount for undisputed hours, a mere flat enhancement of 2% cannot compensate for the time value or the undesirability of

---

[121] ROA.124481-82.

[122] ROA.126093.

[123] ROA.129108.

[124] Defendants' table showing amounts and billing periods covered by their fee payments from 1993 through 2012. ROA.112215. See also ROA.128324, attorney Garrigan's Declaration for 2021 fees, discussing evidence that Defendants understood, and initially complied with, their obligations to pay Plaintiffs' fees from 1995 through 2000.

this litigation and ensure the availability of competent counsel. Plaintiffs' therefore ask that this matter be remanded to the district court for a more realistic assessment of the level of enhancement required to compensate for the time value of money and to discourage the dilatory behaviors described above.

**D.     The denial of fees for the motion practice anticipated by the 2007 CAOs is contrary to this Court's findings that the opportunity to have the Court decide whether further action is needed was part of the success achieved in obtaining the 2007 CAO for which Plaintiffs are prevailing party and lacks a reasonably specific explanation of the basis for the denial.** *Frew v. Traylor*, **688 Fed.Appx. 249, 251** **(5th Cir. 2017).**

In *Frew v. Traylor*, 688 Fed.Appx. 249, 251 (5th Cir. 2017) the Fifth Circuit found Plaintiffs are entitled to fees for time spent on the negotiation and motion practice anticipated by the 2007 CAOs. Specifically, with regard to the Lagging County CAO at issue in that appeal the Fifth Circuit states that

> Plaintiffs here seek attorneys' fees for a discrete set of motions contemplated in the 2007 Corrective Action Order for which they indisputably obtained prevailing party status. Negotiations and motion practice concerning the status of the checkup reports and lagging counties provision come 2011 was part of what Plaintiffs achieved as a result of their 2007 success. This established framework makes the motions at issue more like a compliance or dispute resolution procedure that was a part of the parties' agreement than a new, distinct motion to obtain a form of relief beyond what was established in the original decree. Defendants argue that unlike the mandatory negotiation provision, the Corrective Action Order did not require the filing of a motion in 2012, and Plaintiffs should thus not receive fees when their decision to file a motion ended up not being a sound one. At a minimum, however, part of what Plaintiffs achieved in 2007 was the opportunity to have the Court decide whether the "checkup reports and lagging counties" plan should continue. Prevailing party status obtained in 2007 thus extended to the final step contemplated in the Corrective

Action Order for the lagging counties provision. See Walker, 99 F.3d at 767 ("Monitoring a consent judgment previously entered entitles a plaintiff to attorneys' fees.").

*Frew v. Traylor*, 688 Fed.Appx. at 251 (Internal footnote omitted).

In this finding, the District Court recognized that counsel for Plaintiffs were given the responsibility of obtaining a judicial determination at the end of a CAO when Plaintiffs reasonably believed that further action might be necessary. Implicitly, the Fifth Circuit affirmed the District Court's initial finding that, "[t]o prohibit Plaintiffs' attorneys from being paid for work that is anticipated by the parties' agreements would deprive Plaintiffs of their victory in procuring the Corrective Action Order."[125]

The Fifth Circuit's opinion was in accord with the other circuits regarding fees sought for efforts that were anticipated by the orders agreed to by the parties. In *Alliance to End Repression v.* Chicago, 356 F3d 767, 770 (7th Cir. 2004), the Seventh Circuit recognized that attorney fees are available for efforts anticipated by the parties agreements even if those efforts did not result in a court ruling in the plaintiff's favor.[126] Similarly, in *Johnson v. City of Tulsa, Okla.*, 489 F.3d 1089, 1108-1109(10th Cir. 2007) the 10th Circuit recognized that plaintiffs counsel were entitled to fees for efforts related to the "enforcement mechanism" of the consent

---

[125] Dkt. 1248 at ROA.73025-26.

[126] Citing *Plyler v. Evatt*, 902 F.2d 273, 276 n. 1, 279 n. 4 (4th Cir.1990) and *Turner v. Orr*, 785 F.2d 1498, 1500 nn. 2, 3 (11th Cir.1986) as examples.

decree, regardless of whether those efforts were successful.[127] The Fifth Circuit recognized in *Frew v. Traylor* as quoted above that the efforts to obtain a judicial determination of whether further action is required is anticipated by the agreements of the parties and part of the enforcement mechanism of the Decree and CAOs. Specifically, the Fifth circuit found that such efforts should be treated like a "compliance or dispute resolution procedure" ordinarily entitled to fees. The Fifth Circuit further found that limiting this carve out to efforts anticipated by the Decree or CAOs addresses any concern about Plaintiffs' being entitled to excessive fees.[128]

The CAOs entered in 2007 all contain a provision providing for "opportunity to have the Court decide" whether further action is required that is nearly identical to the provision at issue in *Frew v. Traylor*.[129] As with the lagging counties CAO,

---

[127] See also *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 452 (9th Cir. 2010)(Consent decree establishes prevailing party status entitling plaintiffs' counsel to fees for monitoring that does not result in affirmative relief from the court.); *Cody v. Hillard*, 304 F.3d 767, 773-75 (8th Cir. 2001)(Allowing for recovery of attorney fees for unsuccessful litigation that was intertwined with the consent decree and not unreasonable.); *Plyler*, 902 F.2d at 280-81 (Awarding fees for wholly unsuccessful consent enforcement litigation that was "inextricably mingled" with the claims of the lawsuit.); *Turner v. Orr*, 785 F.2d at 1503-04 (Awarding fees to attorneys for the entity appointed to represent the interest of the class for unsuccessful enforcement litigation.); *Miller v. Carson*, 628 F.2d 346, 347-48 (5th Cir. 1980)(Awarding fees for unsuccessful post judgment enforcement motions based on the overall success of Plaintiffs in the litigation). *Hadix v. Johnson*, 143 F.3d 246,256-259 (6th, 1998) (Prevailing party entitled to fees for post-decree work regardless of success).

[128] ROA.108142-43 ("That the work arises out of a discrete procedure expressly anticipated in the Corrective Action Order also eliminates the concern expressed by the Sixth and Seventh Circuits that early success in institutional litigation could create a 'gravy train' or 'cottage industry' of never-ending fee requests for civil rights attorneys regardless of what they accomplish.").

[129] The applicable provision can be found at: Case Management CAO (Dkt. 637-2 at ROA.15977); Lagging Counties CAO (Dkt. 637-3 at ROA.15982); Checkups CAO (Dkt. 637-

each CAO provides for a negotiation and court determination process that is triggered by some event. In addition to the CAOs, Consent Decree also permits the parties to seek relief from the Court if Defendants fail to comply with the "terms and intent" of the Decree after giving the other party 30 days written notice of the failure to comply.[130]

The District Court's fee orders (Dkt. 2055 and 2042) nevertheless denied all fees related to Plaintiffs efforts to obtain a court determination of whether further action was required to comply with several CAOs, as is anticipated by the relevant CAOs and the Consent Decree.[131] The District Court does not address the Fifth Circuit's determination that such efforts are part of the relief obtained for the benefit of the class and that prevailing party status related to the success of obtaining the Decree and CAOs carries over to such efforts. The District Court's orders also do not address whether the fees sought for these efforts were reasonable in light of Plaintiffs overall success as required by *Hensley*, 461 U.S. at 435-36.

---

4 at ROA.15988); Health Outcomes Measures and Dental Assessment CAO (Dkt. 637-5 at ROA.15992 and ROA.15993-4); Managed Care CAO (Dkt. 637-6 at ROA.16001); Prescription and Non-Prescription Medication and Medical Equipment and Supplies CAO (Dkt. 637-7 at ROA.16012); Provider Supply CAO (Dkt 637-8 at ROA.16024); Toll Free Numbers CAO (Dkt. 637-11 at ROA.16031); Transportation CAO (Dkt. 637-12 at ROA.16035-36); and Amended Outreach and Informing CAO (Dkt. 746 at ROA.29005).

[130]  Consent Decree, Dkt. 135 paragraph 303 at ROA.1755.

[131]  Order for 2011-2021 Fees, Dkt 2055 at ROA.129204-209 (regarding the motion practice related to the Prescription Medications CAO, the Provider Training CAO, the Transportation CAO, and the Outreach and Informing CAO) and Order for 2022 fees Dkt 2042 at  related ROA.129137 (regarding the motion practice related to the Outreach and Informing CAO).

The District Court's denial of fees for efforts to obtain a judicial determination are inappropriately, in light of *Frew v. Traylor*'s clear mandate, based on the lack of success of these efforts. Specifically, the District Court's order on 2011-2021 fees states that "This total lack of success shows the failed motion practice was unnecessary."[132] Furthermore, the District Court's order only permits Plaintiffs to seek future fees related to currently unresolved CAO motions if and only if those motions are successful.[133] In its order on 2022 fees, the District Court found that the language in the Outreach and Informing CAO permitting Plaintiffs' counsel to obtain a judicial determination if the parties could not agree about the need for further action did not permit Plaintiffs' counsel to seek fees related to obtaining that determination.[134] These rulings make it clear that the District Court has made the availability of fees entirely dependent on success even where the CAOs and Decree anticipate such efforts and Plaintiffs should be considered prevailing parties despite

---

[132] Dkt. 2055 at ROA.129205 (citing Dkt 1972 for the proposition that only successful enforcement motions are necessary).

[133] Dkt. 2055 at ROA.129200 ("Plaintiffs may refile their request for these individual time entries if and when the underlying pending motions are resolved successfully in Plaintiffs' favor.") and ROA.129203 ("Plaintiffs may refile their request for these individual time entries if and when the underlying Provider Supply MTV is resolved successfully in Plaintiffs' favor.").

[134] ROA.129137 ("And Section VII of the O&I CAO contemplates that '[f]urther [a]ction' will be needed regarding the evaluation of its effectiveness after certain studies are completed. Docket No. 746 at 14. But it does not contemplate successful litigation efforts by Defendants to vacate the O&I CAO 13 years after its entry.").

a lack of success on a specific motion under *Frew v. Traylor*. As such, the standard applied by the District Court directly conflicts with this Court's mandate.

Indeed, the District Court's fee orders deny Plaintiffs prevailing party status related to the anticipated motion practice based on conclusory and unsubstantiated findings that the efforts to obtain a court determination were "unreasonable, unnecessary, and ultimately unsuccessful."[135] As noted above the Distrct Court's determination of whether the efforts were reasonable is entirely based on whether the efforts were successful. Other than lack of success, the District Court's orders do not point to anything in the record or provide an explanation of the basis for concluding that Plaintiffs' efforts were unnecessary or unreasonable at the time that the efforts were undertaken. Because obtaining a judicial determination is part of the relief obtained for the class, it is particularly important for such finding to be supported by the record to avoid punishing Plaintiffs' counsel for pursuing the relief that was agreed to by the parties. As the District Court has found in an earlier order, "To prohibit Plaintiffs' attorneys from being paid for work that is anticipated by the parties' agreements would deprive Plaintiffs of their victory in procuring the Corrective Action Order."[136]

---

[135]  ROA.129205-209.
[136]  Dkt. 1248 at ROA.73025-26.

Specifically with regard to the Prescription Medication CAO motion practice, the District Court asserts that "[A]fter meeting, conferring, and analyzing whether any need remained for the Prescription and Non-Prescription Medications CAO, it was unreasonable for Plaintiffs to continue with their unsuccessful motion practice and appellate challenge that attempted to preserve the Prescription and Non-Prescription Medications CAO."[137] Again, the District Court does not point to anything in the record that would support such a startling conclusion. As is reflected in this Court's opinion related to the Prescription Medications CAO there were significant legal and factual questions that were uncertain at the time that Plaintiffs' counsel sought a judicial determination. There is nothing in this Court's opinion[138] or the District Court's order[139] dissolving the Prescription Medications CAO to suggest that it was inappropriate or frivolous for Plaintiffs to seek to enforce the agreed right of the class to a judicial determination of these unresolved issues. Indeed, the claim that it was unreasonable for Plaintiffs to seek a judicial determination under the various CAOs at issue in this appeal is not a claim raised by Defendants in their opposition to Plaintiffs' fee motions and appears to have been raised by the District Court *sua sponte*.[140]

---

[137] ROA.129205.

[138] *Frew v. Janek*, 780 F.3d 320 (5th Cir. 2015).

[139] Dkt.1114 at ROA.62135-150.

[140] Dkt. 1673 at ROA.114293-94; Dkt. 1686 at ROA.114541-43; Dkt. 1749 at ROA.117745-46; Dkt. 1850 at ROA.120699-700; and Dkt. 1908 at ROA.124585-86.

Finally, the District Court inappropriately denied all fees despite Plaintiffs'

prevailing party status for purposes of efforts anticipated by the Decree and CAO.

"[T]he discretion afforded district courts to deny attorney's fees to prevailing

plaintiffs under §1988 is exceedingly narrow."[141] The degree of success is not a

special circumstance that justifies eliminating all fees.[142] The Fifth Circuit has found

two circumstances, not at issue here, where a prevailing party may be denied fees.[143]

The absence of such circumstances requires the award of a reasonable fee based on

Plaintiffs overall success in this litigation for efforts anticipated by the Decree and

CAOs.

---

[141]  *Sanchez v. City of Austin*, 774 F.3d 873, 878 (5th Cir. 2014) (quoting *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985).

[142]  *Sanchez*, 774 F.3d at 881.

[143]  *Grisham v. City of Fort Worth*, 837 F.3d 564, 568-569 (5th Cir. 2016):

We recognized the rarity of such circumstances long ago in *Riddell v. National Democratic Party*, 624 F.2d 539, 543-44 (5th Cir. 1980), which identified two types of cases in which full denial of fees have been upheld:(1) " situations in which the plaintiff filed under section 1983 to recover what was essentially a tort claim for private monetary damages," which " did not require injunctive relief or confer significant civil rights to the public" and (2) cases in which " even though the plaintiffs received the benefits desired from their litigation, their efforts did not contribute to achieving those results." We have since rejected a host of other asserted special circumstances, including: a defendant's good faith in enacting overturned laws or policies, *Espino v. Besteiro*, 708 F.2d 1002, 1005 (5th Cir. 1983); a defendant's decision not to appeal a permanent injunction, *Ellwest Stereo Theatre, Inc. v. Jackson*, 653 F.2d 954, 955-56 (5th Cir. 1981); a plaintiff's ability to pay its own costs, id. ; and the district court's view that a prior award of fees was sufficient or that a supplemental request included some clerical work, *Cruz*, 762 F.2d at 1234-35.

**E.    The District Court's denial of fees as premature for CAO related motion practices that remain unresolved and requiring successful resolution of these practices to seek these fees in the future is contrary to *Frew v. Traylor*, 688 Fed.Appx. 249, 251 (5th Cir. 2017), especially as regards the denial of fees related to Plaintiffs' successful defense of the Provider Supply CAO for more than a decade.**

Plaintiffs have been defending and seeking further action related to three CAOs for many years.[144] In the case of the Provider Supply CAO, Plaintiffs have successfully defended against dissolution since 2011, with a number of successes during that time.[145] The motion practice related to each of these CAOs is specifically anticipated by the relevant CAO.[146] Nevertheless, the District Court has denied all fees related these CAO motions and prohibited Plaintiff from seeking fees in the future unless the pending CAO related motion is "resolved successfully in Plaintiffs' favor." This denial of fees is contrary to *Frew v. Traylor*, 688 Fed.Appx. at 251.

Plaintiffs' efforts related to CAO motion practice, should be treated "more like a compliance or dispute resolution procedure that was a part of the parties' agreement than a new, distinct motion to obtain a form of relief beyond what was

---

[144]    The motion practice related to the Dental Assessment CAO was initiated in August of 2014 and remains unresolved. Dkt. 1225 at ROA.71041. The motion practice related to checkups and managed care was initiated in January of 2016 and remains unresolved. Dkt. 1437 at ROA.91441.

[145]    Plaintiffs initially sought further action related to the Provider Supply CAO in November of 2011. Dkt. 845 at ROA.44010.

[146]    Checkups CAO (Dkt. 637-4 at ROA.15988); Health Outcomes Measures and Dental Assessment CAO (Dkt. 637-5 at ROA.15992 and ROA.15993-4); Managed Care CAO (Dkt. 637-6 at ROA.16001); and Provider Supply CAO (Dkt 637-8 at ROA.16024).

established in the original decree."[147] As such, fees for these efforts should be based on Plaintiffs' overall success in this litigation rather than on the success of the specific motion practice. *Hensley*, 461 U.S. at 35-36. Because the award of fees should be based on the reasonableness based on Plaintiffs' overall success rather than on the success of a particular motion, it is unnecessary for the District Court to delay awarding fees for motion practices anticipated by a CAO or the Decree until the outcome of the motion practice is known. This also applies with particular force to the Provider Supply CAO motion practice because of its duration and Plaintiffs' successes in defending the Provider Supply CAO.

The motion practice regarding the Provider Supply CAO was initiated in 2011 when Plaintiffs filed a motion to enforce the provisions of the CAO.[148] The District Court entered an order requiring Defendants to redo the assessments required by the Provider Supply CAO to bring them into compliance.[149] After Defendants corrected the assessments, both parties filed motions requesting that the Court determine whether further action is required to bring Defendants into compliance.[150] The District Court entered and order dissolving the Provider Supply CAO,[151] but this

---

[147]    *Frew v. Traylor*, 688 Fed.Appx. at 251.
[148]    Dkt. 845 at ROA.44010.
[149]    Dkt. 950 at ROA.54342.
[150]    Dkt. 1033 and Dkt. 1053 (sealed motions).
[151]    Dkt. 1280 at ROA.74997.

Court reversed and remanded that order.[152] On remand, Defendants asked the District Court to clarify and reinstate its prior order. This request was denied by the District Court. Defendants have now filed a motion again requesting dissolution of the Provider Supply CAO.[153]

The District Court's order denies all fees during this lengthy dispute except for a few hours that the District Court finds were spent contesting Defendants' initial motion on remand from this Court.[154] In so doing, the District Court fails to recognize Plaintiffs' success in defending the Provider Supply CAO for approximately fifteen years. The District Court also fails to recognize the initial success of requiring Defendants to redo the Provider Supply assessments and the success of obtaining a reversal and remand of the District Court's order that would have dissolved the Provider Supply CAO.

Under the District Court's order, fees related to the Provider Supply CAO motion practice and other fees denied as premature can only be resubmitted if Plaintiffs can demonstrate that these efforts were successful.[155] As a result, Plaintiffs

---

[152] ROA.106710 and ROA.106714.

[153] Defendants' motion acknowledges that they cannot show compliance based on the standard mandated by this Court. Instead, Defendants argue that this Court's opinion regarding provider supply constitutes a change in circumstances that makes prospective enforcement of the Provider Supply CAO inequitable and that their efforts to meet a standard that this Court rejected should be considered sufficient.

[154] ROA.129201-203.

[155] ROA.129195, ROA.129200, ROA.129203, and ROA.129135.

may never be able to seek compensation for their efforts that are specifically anticipated by the relevant CAOs or the Decree. This is contrary to *Frew v. Traylor* which specifically rejects the argument that Plaintiffs' prevailing party status depends on their success for motion practices anticipated by a CAO or the Decree. In the case of the Provider Supply CAO motion practice, this may prevent Plaintiffs from ever seeking compensation for their efforts that were at least partially successful in preserving the relief obtained for the class and requiring some further action by Defendants.

**F.    The District Court improperly denied all fees for all time entries that Defendants alleged were vague without explanation and reversing the a prior order that earlier that fees should be reduced by applicable percentages, also without explanation.**

In its order at Dkt. 1972, the District Court represents that it had reviewed the entries that Defendants had alleged to be insufficiently documented over the years and had determined a percentage reduction for each year to account for such allegedly vague entries.[156] During the subsequent review of time entries ordered by the district court in Dkt. 1972, Defendants' reduced somewhat the number of hours that they alleged were vague, but still objected to more hours than would result from the percentage reduction found applicable by the District Court in Dkt. 1972.[157]

---

[156]   ROA.127049-127050.

[157]   Multiplying the percentage reduction to the applicable annual hours summarized in Dkt. 1972 at ROA.127058 results in a reduction of 647.6 hours. After conducting a review of all hours, Defendants still objected to 890.36 hours as too vague. ROA.129212.

During the subsequent review ordered by Dkt. 1972, Plaintiffs relied on the District Court's percentage reduction ordered by Dkt. 1972 and took the position that the allegedly vague entries had been resolved by the District Court's percentage reduction.[158] In its final order on 2011-2021 fees, the District Court without sufficient explanation decided to reverse course and deny fees for all time entries that Defendants contend are too vague, rather than applying the lesser percentage reduction found to be reasonable in Dkt. 1972.[159]

In support of this about face, the District Court merely states that the number of hours objected to by Defendants had been substantially reduced and points to some entries as being too vague to categorize or link to a specific issue.[160] This finding ignores that managing a case of this complexity requires engaging in tasks that are linked to the case as a whole rather than being tied to specific issues or motions. As stated in *Hensley*, 481 US at 435, "Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide hours expended on a claim-by-claim basis." These tasks are part of the ordinary monitoring required by a case as immense as this litigation. This is represented by the example cited by the District Court of entries for reviewing and prioritizing tasks.[161] The

---

[158] ROA.128520.

[159] ROA.129212-13.

[160] ROA.129213.

[161] ROA.129213.

District Court's findings are simply insufficient to permit a meaningful review of the basis for reversing the earlier percentage reductions or the basis for finding that the hours objected to as vague do not contain even one hour of compensable time.

The approach by the District Court with regard to allegedly vague hours is also inconsistent with the approach taken by this Court in other cases. For instance, in *Louisiana Power & Light Co.*, 50 F.3d at 324-326 this Court only completely eliminated fees for hours that were unsupported by any documentation at all. For hours supported by summaries instead of contemporaneously recorded time records, the Fifth Circuit discounted those fees by 10%. Additionally, the Fifth Circuit upheld full compensation for "scantily" described time. The District Court's total elimination of all time entries alleged by Defendants to be vague is at odds with this Court's approach in *Louisiana Power & Light Co.*

**G.    The District Court improperly denied fees for Plaintiffs' motion to appoint additional counsel based on lack of success since that motion resulted in and was denied as moot because of the award of fees.**

Because of the financial difficulties caused by the decade long delay in any fee award in this case, Plaintiffs found it necessary to file a motion for the appointment of additional counsel.[162] At the hearing on this Motion, Defendants acknowledged that they could be ordered to pay the amounts that they had not

---

[162] ROA.124689.

contested in Plaintiff's fee requests.[163] Accordingly, the District Court found that issues raised by Plaintiffs' motion could be addressed by ordering Defendants' to pay uncontested fees. The Court therefore ordered the payment of uncontested fees and denied Plaintiffs' motion for the appointment of additional counsel as moot.[164] This ultimately resulted in the award and payment of $674,083.20 in uncontested fees with the ability to seek additional amounts based on the District Court's determination of the reasonable hourly rate.[165]

Despite this substantial relief in response to Plaintiffs' motion, the District Court denied Plaintiffs all fees for time spent on the motion because the motion was denied.[166] The District Court erroneously suggest that the payment of fees were unrelated to Plaintiffs' motion because of Defendants' agreement to pay them.[167] when in reality Defendants only agreed that they could be ordered to pay uncontested fees. In reality, Defendants stated that they could not agree to pay uncontested fees, but that the Court could order them to pay such fees.[168] Plaintiffs motion for the appointment of additional counsel clearly prompted the Court to fashion a remedy to address Plaintiffs' concerns in the form of ordering the payment of fees. It was

---

[163] ROA.131422 ln. 7-20.
[164] ROA.126093.
[165] ROA.126347. The resulting payment was of existential benefit to Plaintiffs.
[166] ROA.129136.
[167] ROA.129136.
[168] ROA.131422 ln. 7-20. See also ROA.131412-417.

therefore clear error for the District Court to deny all fees related to this motion based on a finding that it was unsuccessful.

## CONCLUSION

For the reasons stated above, Plaintiffs ask this Court to reverse and remand the orders on appeal and provide such other relief as Plaintiffs may be entitled to.

Respectfully Submitted,

s/ Timothy Borne Garrigan

**Timothy Borne Garrigan**
State Bar No. 07703600
tim2@sgclaw.org
**Timothy David Craig**
State Bar No. 24045716
timothykraig@gmail.com
Stuckey & Garrigan Law Offices
2803 North Street
Nacogdoches, Texas 75963-1902
Phone: 936-560-6020
Fax: 936-560-9578

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing instrument has been served via the

Court's ECF filing system in compliance with Rule 25(b) and (c of the Federal

Rules of Appellate Procedure, on April 18th, 2025, on all registered counsel of

record, and has been transmitted to the Clerk of the Court.

*/s/ Timothy Borne Garrigan*
Timothy Borne Garrigan

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of FED. R. APP. P. 32(A)(7)(B) because:

- this brief contains 11,731 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2.      This brief also complies with the typeface requirements of FED. R. APP. P. 32(A)(5) and the type requirements of FED. R. APP. P. 32(A)(6) because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 with a 14-point font named Times New Roman.

*/s/Timothy Borne Garrigan*
Timothy Borne Garrigan
Attorney-in-Charge for Plaintiff

Dated: <u>April 18, 2025</u>